# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JASON DANTE,

        Plaintiff,

v.                                              CIV No. 20-0702 KBM

ANDREW SAUL,
Commissioner of Social
Security Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Defendant's Motion Pursuant to F.R.C.P. 12(b)(1) to Dismiss Plaintiff's Complaint in Part and to Hold Merits Briefing Schedule in Abeyance (*Doc. 21*), filed on March 10, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 9*; *11*; *12*. Having considered the record, submissions of counsel, and relevant law, the Court finds the Defendant's motion is not well-taken and will be denied. The Court will enter, separately, an Order Setting Briefing Schedule for all of the claims asserted in Plaintiff's Complaint.

## I.    FACTS AND PROCEDURAL BACKGROUND

On July 14, 2020, Jason Dante ("Plaintiff") filed the instant action challenging a denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, which "by reason of action of the Appeals Counsel of the Office of Hearings and Appeals of the Social Security Administration [("SSA")]" became the final decision of the

Commissioner of the SSA. *Doc. 1* ¶ 3. Despite the denial of his DIB claim, Plaintiff asserts that he produced evidence at the administrative level to demonstrate that a disability rendered him unable to engage in substantial gainful activity. *Id.* ¶ 8. Plaintiff maintains that the ALJ reached an unfavorable disability determination, which "lack[ed] substantial support." *Id.* Specifically, he asserts:

A. The ALJ accepted testimony of a vocational expert, which conflicts with the descriptions contained in the Dictionary of Occupational Titles and Selected Characteristics of Occupations without obtaining a reasonable explanation for those conflicts.
B. The ALJ and Appeals Council ignored relevant and material evidence of the Plaintiff's mental and physical limitations.
C. The ALJ and Appeals Council repeatedly failed to give due weight to the evidence of record and the Plaintiff's testimony.
D. Neither the ALJ nor the Commissioner of Social Security were appointed as provided in *Seila LLC v. Consumer Financial Protection Bureau*, 591 U.S. ____ (2020).

*Id.* at 2. In its motion for partial dismissal, the Commissioner addresses Plaintiff's standing to assert his final claim: that the Commissioner was unconstitutionally appointed. *See Doc. 21*. As for Plaintiff's other claims, the Commissioner urges the Court to hold them in abeyance pending resolution of its jurisdictional motion. *Id.* at 2. Accordingly, the Court takes up only the issue of Plaintiff's standing to assert his constitutional claim.

## II.    LEGAL STANDARD

Before proceeding to the merits of a case, a court must satisfy itself that a plaintiff has standing, which is necessary to a court's jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). If a party lacks standing, his claim may be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil

Procedure 12(b)(1). *See Woodard v. Fid. Nat'l Title Insur. Co.*, Civ. No. 06-1170 RB/WDS, 2007 WL 5173415, at *2 (D.N.M. Dec. 4, 2007).

Article III standing arises from the U.S. Constitution's "case or controversy" requirement. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing, a plaintiff must establish (1) actual or imminent injury in fact that is concrete and particularized; (2) a causal connection that establishes the plaintiff's injury is fairly traceable to the defendant's alleged conduct; and (3) that a favorable decision by the court is likely to redress the plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff must "demonstrate standing separately for each form of relief sought" and "for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of Earth, Inc. v. Laidlaw Env't. Servs., Inc.*, 528 U.S. 167, 185 (2000)). When a defendant asserts a facial challenge to a complaint for lack of standing, the court considers the allegations in the complaint taken as true. *See Woodard*, 2007 WL 5173415, at *2.

## IV.   DISCUSSION

Plaintiff asserts a constitutional claim pursuant to *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), arguing that statutory limitations on the removal of the Social Security Commissioner violate the separation of powers. *See Docs.* 1 ¶ 8(I); *25* at 1. In his Motion to Dismiss, however, Commissioner submits that Plaintiff lacks standing to assert this constitutional claim, arguing that he cannot establish two elements of standing: traceability and redressability. *Doc. 21*. Plaintiff counters, insisting that his constitutional claim is both traceable and redressable. *Doc. 25*.

**A.     Plaintiff can establish traceability.**

The first issue before the Court is whether Plaintiff can establish traceability –

that is, a causal connection establishing that his injury is fairly traceable to the

Commissioner's alleged conduct. *See Lujan*, 504 U.S. at 560-61. The injury about which

Plaintiff complains is the denial of his social security disability claim. *See Doc. 1*. In

addition to alleging a constitutional violation, Plaintiff asserts that the ALJ committed

various harmful errors that resulted in that denial. *Id.* at 2-3. The Commissioner

concedes that, as to those "standard" social security claims, Plaintiff can demonstrate

traceability. *Doc. 21* at 5 (citing *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir.

2012)). That is, taking the allegations of Plaintiff's Complaint as true, Plaintiff can show

that the denial of his disability claim is traceable to the errors in the ALJ's disability

determination. *See id*.

In contrast, the Commissioner maintains that Plaintiff's constitutional claim lacks

traceability, as the denial of his disability claim is "not tied in any meaningful way to the

statutory provision that places limits on the Commissioner's removal by the President."

*Id.* at 5-6. While Plaintiff grounds his constitutional claim in the Supreme Court's

rationale in *Seila Law*, the Commissioner maintains that *Seila Law* actually "undermines

his standing" to assert that claim. *See id.* at 21. Given that both parties principally rely

upon *Seila Law* to support their positions, a thorough analysis of the Court's holding and

rationale is warranted.

In *Seila Law*, the Supreme Court considered whether the structure of the

Consumer Financial Protective Bureau ("CFPB"), and specifically its limits on the

President's removal powers, violated the U.S. Constitution's separation of powers. 140 S. Ct. at 2191. The CFPB, an independent regulatory agency within the Federal Reserve system, investigated a law firm for violating the law while providing debt-relief services. *Id*. at 2191 (describing CFPB's role), 2194 (discussing CFPB's action against the law firm). The CFPB issued a civil investigative demand ("CID"), which sought information and documents related to the law firm's practices. *Id*. at 2194. The Supreme Court likened the CID to a subpoena. *See id*. The law firm refused to comply with the CID, and the CFPB filed a petition in federal court to enforce it. *Id*. The law firm defended its noncompliance by asserting that the structure of the CFPB violated the Constitution's separation of powers. *Id*. The district court found no constitutional violation and granted the CFPB's petition. *Id*. at 2194-95. The law firm appealed, and the Ninth Circuit affirmed. *Id*. The Supreme Court granted certiorari. *Id*.

Because the Supreme Court's analysis of the constitutional claim is helpful in framing the standing issue here, the Court begins with *Seila Law*'s merits analysis. The Supreme Court observed that, unlike traditional executive agencies, "Congress provided that the CFPB would be led by a single Director, who serves for a longer term than the President except for inefficiency, neglect, or malfeasance." *Id*. at 2191. The Court described the CFPB's structure as "incompatible with the structure of the Constitution" because it concentrated significant governmental power in a single individual who was "neither elected by the people nor meaningfully controlled (through the threat of removal) by someone who is." *Id*. at 2202-03. Further, the Court held that the CFPB did not fall within either of two recognized exceptions to unrestricted Presidential removal power. *Id* at 2205-06. Noting that "[i]n our constitutional system, the executive power belongs to the

President[,] . . . includ[ing] the ability to supervise and remove the agents who wield executive power in his stead[,]" the Supreme Court held that the limits upon the President's authority to remove the Director of the CFPB were unconstitutional. *Id*. at 2211. The Court remanded, instructing the lower courts to determine whether the issuance of the CID was ratified by an Acting Director removable at will by the President. *Id*. at 2208-11.

The Supreme Court also broached the issue of the SSA's structure in *Seila Law*, though arguably in dicta. The Court noted that the SSA was run by a single Administrator and that the constitutionality of its structure had been questioned by former-President Clinton upon signing it into law. *Id*. at 2202 (citing Public Papers of the Presidents, William J. Clinton, Vol. II, Aug. 15, 1994, pp. 1471-72 (1995)). The Court stopped short of finding unconstitutional the for-cause restriction on removal of the SSA Commissioner; however, it described the agency's structure as "controversial." *Id*. The Court observed that, in contrast to the CFPB, "the SSA lacks the authority to bring enforcement actions against private parties[, and i]ts role is largely limited to adjudicating claims for Social Security benefits." *Id*.

Plaintiff draws upon the Court's analysis in *Seila Law* to argue that the SSA suffers from a constitutional flaw similar to that of the CFPB, noting that it is run by a Commissioner who is removable only upon satisfaction of criteria enumerated in 42 U.S.C. § 902(a)(3). *Doc. 25* at 1-2. In other words, because there are impediments to the President's removal of the SSA Commissioner, Plaintiff contends that the Commissioner, and the ALJ in turn, were unconstitutionally appointed. *Id*. at 2-3. More relevant to the issue immediately before this Court, Plaintiff asserts that *Seila Law*

supports his position that he has standing to assert his constitutional claim. The Commissioner, on the other hand, insists that *Seila Law* is distinguishable and that Plaintiff lacks standing. *See Docs. 21*; *26*.

Addressing the issue of standing in *Seila Law*, the *amicus curiae*[1] argued that the issuance of a CID to the law firm was not an act traceable to the alleged constitutional defect, because "two of the three [CFPB] Directors who . . . played a role in enforcing the demand were (or now consider themselves to be) removeable by the President at will." *Id*. at 2195. The *amicus* insisted that the "[CID] would have been issued – and would have continued to be enforced – even in the absence of the removal protection about which the law firm complained, making the asserted separation of powers dispute 'artificial.'" *Id*. The Supreme Court sided with the parties and against the *amicus*, however, characterizing the law firm's appellate standing as "beyond dispute." *Id*. at 2196. The Court explained that a litigant who challenges a government action as a violation of the separation of powers need not prove, for purposes of standing, that the action would have been different had the government acted "with constitutional authority." *Id*. Rather, the Court reasoned, "[i]n the specific context of the President's removal power, [it is] sufficient that the challenger 'sustain[s] injury' from an executive act that allegedly exceeds the official's authority." *Id*. (citing *Bowsher v. Synar*, 478 U.S. 714 (1986)).

Applying the same logic to this case, Plaintiff's inability to establish that he would have received a favorable disability determination absent the Commissioner's removal

---

[1] The Supreme Court appointed an *amicus curiae* because the parties to the case agreed as to the proper resolution of the issue before the Court. *Seila*, 140 S. Ct. at 2195. The *amicus* defended the lower court's decision granting the CFPB's petition. *Id*.

protections is not fatal to his claim. Indeed, to demonstrate traceability Plaintiff need only allege some injury from an executive act, which purportedly exceeded the acting official's constitutional authority. *See id*. The Court examines Plaintiff's constitutional claim in light of the Court's guidance in *Seila Law*, taking note of the differences between the CFPB and the SSA.

Plaintiff summarizes his position as follows: "the Commissioner was unconstitutionally appointed and . . . his power to appoint and remove ALJs is unconstitutional." *Doc. 25* at 2. He briefly expands on this position, explaining:

> 42 U.S.C. §405(b)(1) permits only the Commissioner to make findings of fact and issue final decisions as to benefits eligibility. Just as importantly, an ALJ's authority to decide a case comes from a delegation of authority from the Commissioner. If there is no valid Commissioner, then there is no valid delegation of authority.

*Id*. at 3. Assuming Plaintiff is correct that the Commissioner's removal protections violate the Constitution, the Court can follow Plaintiff's logic -- that is, the Commissioner acted outside his constitutional authority when he delegated to the ALJ the authority to decide Plaintiff's disability claim. Nevertheless, a recent Supreme Court case casts doubt on the viability of this constitutional theory.

In *Collins v. Yellen*, a group of shareholders ("the plaintiffs") argued that the structure of the Federal Housing Finance Agency ("FHFA") violated the separation of powers, as it was led by single director who could be removed by the President only for cause. 141 S. Ct. 1761, 1770 (2021) (citing 12 U.S.C. § 4512(a), (b)(2)). Specifically, the plaintiffs challenged the constitutionality of the third amendment to an agreement that the FHFA entered into with the U.S. Department of Treasury. *Id*. The FHFA, an independent agency created by the Housing and Economic Recovery Act of 2008

("Recovery Act"), was tasked with regulating mortgage financing institutions including Fannie Mae and Freddie Mac. *Id*. The FHFA placed Fannie Mae and Freddie Mac into conservatorship and negotiated agreements with the Treasury. *Id*. Under the third amendment to the agreement between the FHFA and the Treasury, Fanny Mae and Freddie Mac transferred immense amounts of wealth to the Treasury. *Id*. Insisting that the statutory removal protections on the FHFA Director rendered its structure unconstitutional, the plaintiffs urged the Court to entirely undo the third amendment. *Id*. In support, they asserted that the third amendment was adopted and implemented by executive officers who lacked constitutional authority on account of their removal restrictions, which the plaintiffs maintained rendered both the amendment and its implementation void *ab initio*. *Id*. at 1787.

The Supreme Court agreed that the statutory restrictions on the President's power to remove the FHFA Director were unconstitutional, but it disagreed with the plaintiff's position that the officers of the FHFA therefore acted outside of their constitutional authority. *Id*. The Court reasoned that "[a]ll the officers who headed the FHFA during the time in question were properly *appointed*." *Id*. The Court explained:

> [a]lthough the statute unconstitutionally limited the President's authority to remove the [FHFA's] confirmed Directors, there was no constitutional defect in the statutorily prescribed method of *appointment* to that office. As a result, there [was] no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

*Id*. (emphasis added). The Court emphasized that there was no reason to conclude that the FHFA head lacked the authority to carry out the functions of the office. *Id*. at 1788. Referencing *Seila Law*, the Court reasoned that "[s]ettled precedent also confirms that the unlawfulness of the removal provision does not strip the Director of the power to

undertake the other responsibilities of his office." *Id.* at 1788 n.23 (citing *Seila Law*, 140 S. Ct. at 2207-11).

This rationale appears to undermine Plaintiff's position that the Commissioner acted outside his constitutional authority when he delegated authority to the ALJ to decide Plaintiff's disability claim. But, curiously, the Court's analysis in *Collins* also *supports* a finding that Plaintiff has standing to assert a constitutional claim under this now-questionable theory. Indeed, before taking up the merits of the plaintiffs' constitutional claim in *Collins*, the Court first satisfied itself that the plaintiffs had standing to assert that claim. See *id.* at 1778. The Court acknowledged that judges in the lower courts found the plaintiffs to be without standing, but it held otherwise, determining that they could demonstrate an injury in fact that was fairly traceable to the FHFA's conduct, which would likely be redressed by a favorable decision. *Id.* at 1779.

Specifically as to traceability, the Court reasoned that the plaintiffs' injury (i.e. the transfer of the value of their property rights in Fannie Mae and Freddie Mac to the Treasury) was traceable to the FHFA's adoption and implementation of the third amendment to the agreement, which was an action taken by the FHFA in its capacity as regulator. *Id*. The Court observed that "[t]he judges who thought that the [plaintiffs] lacked standing reached that conclusion on the ground that [they] could not trace their injury to the Recovery Act's removal restriction." *Id*. Yet, the Court explained that the relevant inquiry was, instead, "whether the plaintiff's injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged." *Id*. (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984), *rev'd on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc*., 572 U.S. 118 (2014); *Lujan*, 504 U.S. at

560). Because the relevant executive action in *Collins* was the third amendment to the agreement between the FHFA and the Treasury, and because the plaintiffs' injury flowed directly from that amendment, the Court was satisfied that the plaintiffs had demonstrated traceability. *Id*.

Here, Plaintiff similarly alleges that he incurred an injury (i.e. an unfavorable disability determination), which flowed from the Commissioner's act of delegating adjudicative authority to the ALJ, an act he maintains was outside of the Commissioner's constitutional authority. Although Plaintiff's constitutional claim may ultimately prove unsuccessful, especially given the Court's analysis of constitutional authority in *Collins*, at this stage the Court cannot say his claim lacks traceability. Indeed, the Court's rationale in *Collins* supports a finding of traceability.

The Commissioner argues that traceability is wanting for a different reason: because the Commissioner was not directly involved in the disability determination that caused Plaintiff's injury. *Doc. 21* at 6 (citing *Seila Law*, 140 S. Ct. at 2196). The Commissioner acknowledges that under 42 U.S.C. § 405(g) an ALJ's decision is the final decision of the Commissioner for purposes of judicial review. *Id*. at 7. But he insists that, in reality, the Commissioner plays no role in that decision. *Id*. In fact, he maintains that the ALJ's disability determination is insulated from the Commissioner by design. *Id*. (citing 42 U.S.C. § 902(a)(7); HALLEX I-2-0-2(A)). According to the Commissioner, "[t]he process of federal agency adjudication is structured 'so as to assure that the hearing examiner exercises his independent judgment on the evidence before him, free from pressures by the parties or other officials within the agency.'" *Id*. (quoting *Butz v. Economou*, 438 U.S. 478, 513 (1978)). The Commissioner's lack of involvement in the

disability adjudication, he maintains, distinguishes this case from *Seila Law*, where the actions against the law firm were initiated at the CFPB Director's behest. *Id*.

But Plaintiff points to an executive order entitled "Exempting Administrative Law Judges From Competitive Service," issued by then-President Donald Trump following the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).[2] *Doc. 25* at 2-3 (citing Exec. Order 13,843, 83 Fed. Reg. 32755 (2018)).[3] Plaintiff suggests this executive order gave agency heads "unlimited discretion" to appoint ALJs. *Id*. at 3 (citing Spencer Davenport, *Resolving ALJ Removal Protections Problem Following Lucia*, 53 U. Mich. J.L. Reform 693, 700 (2020)). The language of the executive order provides that ALJs are selected based upon "work ethic, judgment, and ability to meet the particular needs of the agency." Executive Order 13,843. The Court agrees that this executive order stands in contrast to the more prescribed manner in which the ALJs were previously selected and effectively grants the Commissioner of the SSA more discretion in evaluating and selecting ALJ candidates. *See* Davenport, *supra* at 700. Given the Commissioner's significant discretion in selecting ALJs and § 405(g)'s dictate

---

[2] In *Lucia*, the Securities and Exchange Commission ("SEC") instituted an administrative proceeding against Raymond Lucia and his investment company. 138 S. Ct. at 2049. The ALJ who was assigned to Mr. Lucia's case determined that Mr. Lucia violated the law and imposed sanctions against him. *Id*. On appeal to the SEC, Mr. Lucia argued that the ALJ was not constitutionally appointed. *Id*. at 2050. Specifically, he asserted that the SEC's ALJ qualified as an officer of the United States under Article II of the U.S. Constitution whose appointment Congress may vest only in the President, Courts of Law, or Heads of Departments. *Id*. Because the SEC's ALJs were selected by staff members, Mr. Lucia argued that the ALJ assigned to his case "lacked constitutional authority to do his job" and the administrative proceeding he conducted was invalid. *Id*. at 2049-50. The Supreme Court agreed, determining that Mr. Lucia raised a valid Appointments Clause claim for which he was entitled to relief. *Id*. at 2051-56.

[3] The ALJ entered his decision on Plaintiff's claim on May 16, 2019, *following* former-President Trump's executive order in 2018. *See* AR at 22-39.

that the ALJ's disability determination is the final decision of the Commissioner, the Court is not persuaded that the Commissioner lacks sufficient involvement in the disability determination to undermine traceability.

Finally, the Commissioner maintains that Plaintiff cannot establish traceability because the ALJ who decided his disability claim was appointed by an *Acting* Commissioner, who the President could remove at will. *Doc. 21* at 2. The Commissioner explains that, historically, ALJs were appointed through a competitive process directed by the Office of Personnel Management, but this changed after the Supreme Court's decision in *Lucia* raised questions as to the constitutionality of these appointments. *Id.* at 8. Indeed, on July 16, 2018, in the wake of *Lucia*, the SSA agency head ratified all prior ALJ appointments, making them her own. *See* Social Security Ruling 19-1p, 2019 WL 1324866, at *2 (March 15, 2019).[4] But, as the Commissioner points out, these appointments were ratified by Nancy Berryhill, an *Acting* Commissioner. *Doc. 26* at 2; *see also* SSR 19-1p, 2019 WL 1324866 at *2.

The Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345, authorizes the President to direct a person to perform the duties and functions of a Senate-confirmed position upon vacancy; however, it specifies that they serve "temporarily in an acting capacity." 5 U.S.C. § 3345(a)(3). In a 2016 Memorandum, the President, acting under the authority of the FVRA, provided an order of succession for the performance of the functions of the office of Commissioner of the SSA. *See* Memorandum of December 23,

---

[4] SSR 19-1p explains that "[t]o address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own." SSR 19-1p, 2019 WL 1324866 at *2.

2016, *Providing an Order of Succession Within the Social Security Administration*, 81 Fed. Reg. 96337, 96337, 2016 WL 787744 (Dec. 23, 2016). The President authorized the "Deputy Commissioner for Operations" as the first in line to "perform the functions and duties of the office of Commissioner" in event of vacancy. *See id*. The Commissioner notes that Berryhill served as the Deputy Commissioner for Operations and became responsible for performing the duties and functions of the Commissioner upon its vacancy in July 2018. *Docs. 21* at 2, 8 n.2.

According to the Commissioner, Acting Commissioner Berryhill appointed the ALJ who issued the May 16, 2019 decision on Plaintiff's disability claim. *Id*. at 9. The Commissioner submits, however, that as an *Acting* Commissioner Berryhill did not enjoy the statutory removal protections in 42 U.S.C. §902(a)(3). *Id*. at 2, 8. Therefore, he maintains that "the injury [Plaintiff] alleges (the unfavorable decision the ALJ rendered on his disability claim) is not 'fairly traceable' to the constitutional defect he alleges (the statutory provision that places limits on the President's removal of the Commissioner)." *Id*. at 9.

For his part, Plaintiff does not deny that the ALJ who decided his disability claim was appointed by an Acting Commissioner, but he insists that Berryhill's temporary status "is a red herring because *Lucia v. SEC,* 138 S. Ct. 2206 (2018) requires ALJs be appointed in accordance with the Constitution." *Doc. 25* at 3. Plaintiff argues that an "ALJ appointed by an *acting* Commissioner is just as unconstitutional under *Lucia* as appointment by a Commissioner with removal protections under *Seila Law*." *Doc. 25* at 3. As best the Court can surmise, Plaintiff pivots his argument to one grounded in the Appointments Clause rather than Presidential removal restrictions. He appears to

suggest that the ALJ who decided his claim should have been appointed by a Senate-confirmed Commissioner pursuant to the Appointments Clause and *Lucia*.

But, as the Commissioner points out, the designation of Acting Commissioner permitted Berryhill to exercise the authority of the office of the Commissioner, including the appointment of ALJs. *See Doc. 26* at 3 (citing 5 U.S.C. § 3345(a)). Acting Commissioner Berryhill accomplished this retrospectively by ratifying prior ALJ appointments. *See* SSR 19-1p, 2019 WL 1324866 at *2. Plaintiff offers no support for his apparent position that Berryhill's acting status left her unable to perform these duties of Commissioner.

And, notably, *Collins* gives some credence to the Commissioner's position that the acting nature of an agency head's appointment has significance in the context of a constitutional removal restrictions claim. In *Collins*, the federal parties and the *amicus* argued that the plaintiffs could not make out a constitutional removal restriction claim because the executive action was carried out by an *Acting* Director of the FHFA, who unlike a Senate-confirmed Director was removable by the President at will. 141 S. Ct. at 1781. The Court indicated that a constitutional removal restrictions claim would be precluded if (1) the Acting agency head *was* removable at will; and (2) the entirety of the harm to the plaintiffs was completed in the absence of a Senate-confirmed agency head. *See id*. It reasoned that if those two conditions are met, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed the [plaintiffs], and they would not be entitled to any relief." *Id*.

In consideration of the first condition -- whether the Acting Director was removable at will -- the Court began with the premise that the President has the power

to remove executive officers at will. *Id*. at 1783. Next, it considered whether plain statutory language restricted that power in the case of *Acting* agency heads. *Id*. The removal restriction at issue in *Collins* provided that "[t]he Director shall be appointed for a term of 5 years, unless removed before the end of such term for cause by the President." *Id*. at 1781-82 (citing 12 U.S.C. § 4512(b)(2)). The Court observed that the removal restriction referred "only to 'the Director,' and [was] surrounded by other provisions that apply only to the Director." *Id*. at 1782 (citing § 4512(a), (b)(1), (b)(3)). Thus, the Court found that the statutory removal restrictions did not extend to an *Acting* Director of the FHFA. *Id.* at 1781-83. Consequently, the Court held that any harm resulting from actions taken under the Acting Director were not attributable to a constitutional violation. *Id*.

But, here, the statute supplying the restrictions against Presidential removal, 42 U.S.C. § 902(a)(3), provides that "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." § 902(a)(3). This inclusive language stands in contrast to other subsections of § 902(a) that apply to "the Commissioner," rather than "[a]n individual serving in the office of Commissioner." *See generally* §902(a). In the Court's view, the plain language of §902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an *Acting* Commissioner. Although the Commissioner insists that the Acting Commissioner is not subject to the removal restrictions in § 902(a), he does not cite any particular authority for this proposition. As

such, the Court rejects his argument that Plaintiff fails to establish traceability on the basis that the ALJ was appointed by an *Acting* Commissioner.

Given the structure of the SSA, the Commissioner's statutory removal protections, the SSA's considerable discretion in appointing ALJs, and the Supreme Court's rationale in *Seila Law* and *Collins*, the Court is satisfied that Plaintiff has sufficiently alleged an injury attributable to an executive officer who he alleges lacked constitutional authority. As such, the Court finds that Plaintiff has demonstrated traceability for purposes of standing.

**B.    Plaintiff can establish redressability.**

Plaintiff must also establish that a favorable decision by the Court is likely to redress his injury. *See Lujan*, 504 U.S. at 560-61. The Commissioner insists that this Court has "no means to redress the constitutional injury Plaintiff alleges." *Doc. 21* at 2. But Plaintiff maintains otherwise. *Doc. 25* at 3-4.

The Commissioner concedes that there are cases in which constitutional challenges are properly raised and resolved in proceedings under 42 U.S.C. § 405(g). *Doc. 21* at 10. By way of example, he points to *Weinberger v. Salfi*, 422 U.S. 749 (1975). In *Salfi*, the claimant asserted a constitutional challenge to a provision of the Social Security Act which required a nine-month marriage for eligibility for widow's benefits. 422 U.S. at 754-55. The Supreme Court concluded that the duration-of-marriage provision of the Social Security Act supplied the standing and the substantive basis for the claimant's constitutional claim. *Id*. at 760-61. Although the Court disagreed with the claimant on the merits of her constitutional claim, it suggested that if her claim

had been successful, the Court would have reversed the Commissioner's decision and remanded for an award of benefits. *See id*. at 760-61, 767.

The Commissioner insists that the circumstances here are different from those in *Salfi*. Most notably, he observes that, unlike in *Salfi*, a remand based on Plaintiff's constitutional claim would not dictate an award of disability benefits. *Doc. 21* at 11. Even if Plaintiff happened to receive a favorable decision on remand, the Commissioner contends that "it would have nothing to do with the constitutional violation Plaintiff alleges." *Id*. at 11-12. In fact, according to the Commissioner, "Plaintiff posits no manner in which his alleged injury can be redressed by a judgment remanding his claim." *Id*. at 13. The Commissioner submits that if the Court were to grant Plaintiff's constitutional claim without a finding that the ALJ committed a harmful error in deciding Plaintiff's disability claim, an "endless string of requested remands" may ensue. *Id*.

Plaintiff sees things differently. He submits that if he is successful on his constitutional claim, a new hearing on remand would necessarily be conducted by an ALJ appointed by a Commissioner stripped of his or her removal protections, which he describes as a "meaningful remedy that certainly 'affects the behavior of [the Administration] towards the plaintiff.'" *Id.* (citing *Doc. 21* at 11; *Rhodes v. Stewart*, 488 U.S. 1, 2 (1988)).

As an initial matter, the Court agrees with the Commissioner that this case is distinguishable from *Salfi*. Plaintiff challenges the constitutionality of the Commissioner's removal protections instead of a provision of the Social Security Act that prevented him from obtaining disability benefits. However, turning to the rationale offered by the

Supreme Court in *Seila Law, Lucia*, and more recently in *Collins*, the Court is persuaded that Plaintiff can establish redressability for purposes of standing.

The *amicus* in *Seila Law* argued that the law firm's constitutional defense was not presented in the proper context. *Seila Law*, 140 S. Ct. at 2196. Clarifying that removal restrictions may be challenged even absent a contested removal, the Court held that the law firm's injury "would be fully redressed if [it] were to reverse the judgment of the Court of Appeals and remand with instructions to deny the Government's petition to enforce the demand." *Id*. at 2196. Because Plaintiff here seeks a fresh disability determination by an ALJ appointed by a Commissioner stripped of removal protections, rather than the cessation of some unwanted regulatory action, *Seila Law* is not directly on point. Still, the Court's rationale provides helpful guidance.

The Supreme Court in *Seila Law* observed that its "precedents have long permitted private parties aggrieved by an official's exercise of executive power to challenge the official's authority to wield that power while insulated from removal by the President." 140 S. Ct. at 2196 (citing *Bowsher*, 478 U.S. at 721; *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 487 (2010); *Morrison v. Olson*, 487 U.S. 654, 668 (1988)). The Court went on:

> we have expressly 'reject[ed]' the 'argument that consideration of the effect of a removal provision is not 'ripe' until that provision is actually used,' because when such a provision violates the separation of powers it inflicts a 'here-and-now' injury on affected third parties that can be remedied by a court.

*Id*. (citing *Bowsher*, 478 U.S. at 727 n.5) (internal quotation marks omitted). Extending this rationale to the present case suggests that Plaintiff, who was aggrieved by an

unfavorable disability determination, has standing to lodge a separation of powers challenge to the structure of the Social Security Administration.

The Supreme Court recently revisited the issue of redressability for unconstitutional removal restrictions in *Collins*. There the plaintiffs' sought declaratory and injunctive relief for their removal restrictions claim, including a declaration that the subject third amendment to the agreement between the FHFA and the Treasury was unconstitutional, an injunction ordering the Treasury to return or re-characterize dividend payments made under the third amendment, an order vacating and setting aside the third amendment, and/or an order enjoining the FHFA and Treasury from taking further action to implement the third amendment. *Collins*, 141 S. Ct. at 1775. The Court concluded that "a decision in the [plaintiffs'] favor could easily lead to an award of at least some of the relief that the [plaintiffs'] sought." *Id*. at 1779. As such, the Supreme Court found that the plaintiffs had standing to assert their constitutional claims. *Id*.

At the same time, the Court denied the plaintiffs' requested relief – that the third amendment be "completely undone" because it was adopted and implemented by officers who lacked constitutional authority. *Id*. at 1787. The Court described the plaintiffs' argument as "neither logical nor supported by precedent," concluding that, because there was no constitutional defect in the *appointment* of the FHFA Director, there was no reason to regard any of the actions taken by the agency as void. *Id*.

Addressing what could be perceived as an inconsistency with its rationale in *Seila Law*, the *Collins* Court offered the following: "What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." *Id*. at 1788 n.24. The Court insisted that

*Seila Law* merely held that a plaintiff who challenges a removal restriction "can establish standing by showing that it was harmed by an action that was taken by [an executive] officer and that the plaintiff alleges was void." *Id*. (citing *Seila Law*, 140 S. Ct. at 2195–96).

Considering the Court's rationale in *Seila Law* together with its rationale in *Collins* demonstrates that establishing redressability for purposes of standing is a *far* easier hurdle for plaintiffs than establishing the right to relief. Here, if Plaintiff's constitutional claim *could* lead to an award of the relief he seeks – a new disability determination – he meets the redressability standard.

*Lucia* offers some support for the notion that Plaintiff's constitutional claim could lead to an award of the relief he seeks, though its application is less straightforward following *Collins*. In *Lucia*, the Supreme Court determined that the authority to decide Mr. Lucia's case was delegated to the ALJ in violation of the Appointments Clause. *Lucia*, 138 S. Ct. at 2055. As Mr. Lucia timely contested the validity of the ALJ's appointment, the Court asked, "[W]hat relief follows?" *Id*. The Court answered its own question, concluding that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." *Id*. The Court clarified that "[t]o cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which [Mr.] Lucia is entitled." *Id*. In short, Mr. Lucia's appointments clause claim was redressable by requiring the agency to supply a properly-appointed ALJ on remand.

If the Court were to extend *Lucia's* rationale to the present case, Plaintiff's constitutional claim could be redressed through a new adjudication before an ALJ

appointed by a Commissioner stripped of his removal protections. Given the Court's analysis in *Collins*, however, it is not immediately clear that Plaintiff is entitled to the same relief in a removal restrictions case as he would be in an Appointments Clause case. *See Collins*, 141 S. Ct. at 1787-88; *see also supra* pp. 8-10. Even so, given the Supreme Court's guidance in *Seila Law* and its implicit warning in *Collins* not to conflate the issue of "entitlement to relief" with redressability for purposes of standing, *see Collins*, 141 S. Ct. at 1788 n.24, the Court is satisfied that Plaintiff can establish redressability for purposes of standing. The Commissioner's motion will be denied on this issue as well.

## V. Conclusion

For all of these reasons, the Court finds that Plaintiff's constitutional claim is both traceable and redressable and may be considered on its merits. Having now resolved the Commissioner's motion to dismiss, the Court finds that all of Plaintiff's claims – those asserted under the Constitution and those asserted under 42 U.S.C. § 405(g) – should be briefed in accordance with a briefing schedule to be entered contemporaneously with this Memorandum Opinion and Order.

Wherefore,

**IT IS ORDERED** that Defendant's Motion Pursuant to F.R.C.P. 12(b)(1) to Dismiss Plaintiff's Complaint in Part and to Hold Merits Briefing Schedule in Abeyance (*Doc. 21*) is **denied**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent